IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| MICHAEL DEAN ALBERT,<br><br>                  Plaintiff,<br><br>v.<br><br>PAUL REES, et al.,<br><br>                  Defendants. | CV 21-16-H-BMM-KLD<br><br>FINDINGS AND<br>RECOMMENDATIONS |

Pending before the Court is Defendants Paul Rees, Heidi Abbott, Melissa Scharf, Connie Winner, and Alishia Jamieson's motion for summary judgment. (Doc. 55). Based on the following discussion, the Court recommends that the motion be granted.

**I.  BACKGROUND**

The basic facts underlying this litigation are as follows.[1] Plaintiff Michael Dean Albert is an inmate at Montana State Prison ("MSP"). Albert had open heart surgery in 2017 and had an artificial aortic valve replacement. Albert also has an amputated leg. A patient with an artificial valve must be on blood-thinning medication for life. Albert must have frequent testing to ensure that his blood is

---

[1] These facts are drawn from the Complaint and Amendment (Docs. 2 and 34) and Defendants' Statement of Undisputed Facts (Doc. 57). Plaintiff failed to file a Statement of Disputed Facts with his response to summary judgment, but he did append several documents and a narrative. (Doc. 63 and 63-1.)

1

clotting properly, and that the anti-clotting medication in his blood is at proper therapeutic levels. When the regular testing shows results outside of what is considered the proper range, additional medications can be administered as a stopgap measure until the regular medications are adjusted.

Albert was on medical parole for some time following his 2017 surgery. He returned to MSP following revocation of his parole in approximately June of 2019. Albert contends that, since that time, he has not received proper care for either his amputated leg or his artificial aortic valve. He asserts that his conditions were well-managed while he was on parole, but since his return to MSP, Defendants have failed to monitor his blood properly, manifesting deliberate indifference to his serious medical needs, in violation of the Eighth Amendment.

On April 11, 2022, Defendants moved for summary judgment. Almost simultaneously, on April 12, Albert filed a motion for an interlocutory appeal and a motion for an injunction. (Docs. 59 and 60.) This Court issued an Order and Findings and Recommendations on these motions on May 2, 2022, and allowed Albert an extension to file his response to the motion for summary judgment. Albert responded on May 23, 2022, with a document that is labelled "Motion Opposing Summary Judgment, Courts Findings, Recommendation and Order." (Doc. 63.) This document does not comply with the requirements of L.R. 56.1(b), which requires a Statement of Disputed Facts that responds to Defendants'

Statement of Undisputed Facts. However, Albert's response does include several documents that he explains thoroughly, so the Court will construe these documents as Albert's proposed evidence of disputed fact.

Albert's document further objects to this Court's previous Findings and Recommendations, seeks appointment of counsel and expert witnesses, and asks for additional discovery. To the extent he is objecting to this Court's prior Findings and Recommendations, those objections are left to the Article III judge reviewing that filing. 28 U.S.C. § 636(b)(1). To the extent he seeks appointment of counsel and experts, and asks for additional discovery, this Court has already ruled on those requests. (Docs. 25, 54, and 62.) This renewed motion does not change the Court's analysis.

Defendants also point out that Plaintiff never responded to requests for discovery, nor did he provide an initial disclosure, as required by the Court. (Doc. 56 at 13.) He has, however, provided vast numbers of documents along with his submissions. The Court relies on the documents attached to both parties' submissions as the basis of its determination regarding material factual disputes. Though the Court could enter judgment as a sanction for Plaintiff's failure to participate in discovery, cases are better decided on their merits when possible, and it is clear from Plaintiff's submissions that he has had access to many documents

related to his care, both of his own possession, and as provided by Defendants through discovery.

## II. ANALYSIS

### A. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Id.* at 324. In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in the non-moving party's favor. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

### B. Analysis

Defendants' brief in support of their motion for summary judgment emphasizes three points: Plaintiff has failed to raise a disputed fact regarding deliberate indifference; Defendants Winner, Scharf, and Abbot had no personal involvement in the medical treatment of Plaintiff; and Defendants are entitled to qualified immunity. The Court will take these points in turn.

1.  Eighth Amendment Standard

To state a §1983 claim for failure to provide medical care, a prisoner must allege a defendant's "acts or omissions [were] sufficiently harmful to evidence a deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986).

In the Ninth Circuit, the test for deliberate indifference to medical needs is two-pronged: (1) "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain"; and (2) "the plaintiff must show the defendant's response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). The second prong requires a

showing of: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 quoting *Jett*, 439 F.3d at 1096. "Such indifference may be manifested in two ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1988) (citing *Estelle*, 429 U.S. at 104-05).

  2. Deliberate Indifference to Albert's Serious Medical Need

Albert's Complaint and its Amendment assert claims of deliberate indifference regarding three medical conditions, his heart valve, his leg amputation, and his mental health. (Docs. 2 and 34.) Defendants address all three of these in their motion for summary judgment. Albert's response addresses only issues related to his heart valve.

  a. Heart Valve

Albert alleges that Defendants have been deliberately indifferent to his medical need to maintain his medication blood levels at a therapeutic level. These levels are to be monitored regularly, and should they fall below or climb above the proper range, medications are adjusted accordingly. Albert asserts that it is dangerous for him to be "out of range," and "[t]his happens often at MSP…" Doc. 2 at 48.

In support of their motion for summary judgment on this issue, Defendants state that, since Albert's return to MSP in June of 2019, his medication levels have been consistently monitored, and, when found to be out of therapeutic range, responsive actions have been taken. (Doc. 57 at ¶ 38.) The records submitted by Defendants clearly show variation in the levels of medication in Albert's blood. (Doc. 56-1 at 33 – 36.) However, they also show responsive actions being taken. In addition, Defendants point out variables that may affect the levels, such as diet and patient compliance, that are beyond the control of Defendants; they can only react when changes are seen in the blood levels. (Doc. 57 at 7 – 12.) The undisputed facts are that Defendants consistently monitored Albert's medication levels and reacted accordingly.

Albert responds with incidents where his levels were low, and he did not receive the response medication to boost them. (Doc. 63 at 16.) Part of what is confusing in this response is that he mentions dates from 2018, prior to his medical parole, when his levels were low and, similarly, he did not receive the responsive medication.[2] (Doc. 63 at 16 – 17.) Albert does identify several incidents when the

---

[2] It is unclear from the record the exact sequence of events around Albert's surgery in 2017 and his medical parole. The record contains documents from January 2018, when, given the parties' descriptions, Albert should have been on medical parole, but these documents show blood draws ordered by Dr. Rees at MSP. (Doc. 63-1 at 3 – 6.) These documents also show different therapeutic ranges than are generally discussed by the parties elsewhere.

therapeutic level was low, but the report was inaccurately characterized as normal, and no action was taken. (Doc. 63 at 17 – 18.) These occasional incidents are also apparent on the spreadsheet provided by Defendants at Doc. 56-1 at 33 et seq.

There is no dispute between the parties that maintenance of Albert's heart valve is a serious medical need, without which he could suffer extreme consequences, thus meeting the first prong of the Ninth Circuit's Eighth Amendment analysis. However, the parties diverge on the second prong, whether Defendants' response to the need was deliberately indifferent. At this stage, Albert must raise disputed material fact that may show: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 quoting *Jett*, 439 F.3d at 1096. "Such indifference may be manifested in two ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1988) (citing *Estelle*, 429 U.S. at 104-05). Albert's allegations fit this second approach.

Albert has failed to meet this burden. The evidence demonstrates that Albert has been monitored weekly since he arrived back at MSP. His levels have fluctuated, and Defendants have responded to that fluctuation. Whether there have been occasions when he did not receive ideal treatment, i.e., his levels have dipped

and he has not received the compensating medication, is not the bar. A plaintiff must show that his doctors or nurses embarked on a course of "medically unacceptable" treatment in "conscious disregard of an excessive risk to [his] health." A claim of mere negligence related to medical problems, or a difference of opinion between a prisoner patient and a medical doctor, is not enough. *Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004). Albert has been monitored and treated, he has been counseled, he has received an MRI to determine the condition of his heart, and all of these interventions have resulted, thus far, in a demonstration of no life-threatening clogs or vegetations. (Doc. 57 at ¶¶ 71 – 73.) The only harm he can identify, from his treatment, is anxiety, which is a predictable result of serious health conditions. Defendants have not been deliberately indifferent to Albert's heart condition.

      b. Amputation

Albert's Complaint alleges that he was "ignored by all medical staff to continue treatment for [my] leg since…June 2019." The records submitted by Defendants show there was a delay in obtaining a new prosthetic leg for Albert, after the one he possessed prior to his arrival at MSP could not be located. However, he has since been given a new leg, with multiple associated appointments for fitting and adjusting. He also has been given crutches, a wheelchair while his own is out for repair, a shower chair, pain management

patches, a low bunk and then single cell, and inmate aids to assist him in his daily tasks. (Doc. 57 at ¶¶ 77 – 86.) Further, medical staff have monitored his stump for infection, and ordered an x-ray and MRI and bloodwork to check for infections. These tests have come back normal. (Doc. 57 at ¶¶ 87 – 95.) Albert has produced no evidence to put any material fact on this issue into dispute, nor has he responded to Defendants' argumentation in their brief. Defendants have not been deliberately indifferent to serious medical needs he has related to his amputation.

      c. Mental Health

Albert's allegations regarding his mental health are in his Amendment, where he states that he has sought help and not received it. (Doc. 34 at 6.) Albert's submission includes several documents related to requests for mental health treatment, though they are not all legible.  (Doc. 34-1 at 64 – 103.) Defendants' SUF states that Albert was seen by mental health providers on various occasions from April, 2020, through March, 2022. (Doc. 57 at ¶¶ 101 – 105.) Albert did not respond to Defendants' brief regarding this issue.

Albert has failed to carry his burden to raise a disputed material fact regarding mental health treatment. He has not demonstrated that he has a serious medical need, but assuming, for the purpose of this analysis, that he does, he has not raised an issue that his need has been disregarded, or that he has been harmed by any lack of attention to this need. He has seen mental health providers over the

course of the last three years. (Doc. 57 at ¶¶ 101 – 105.) Without a Statement of Disputed Fact from Albert, or any argument in his brief on this issue, the Court determines that there is no evidence that Defendants have been deliberately indifferent to Albert's mental health needs.

3. Defendants Winner, Scharf, and Abbot

Section 1983 will not impose liability on supervising officers under a respondeat superior theory of liability. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691-94 (1978). A defendant will not be held liable just because he or she oversees the State, a prison, or the Department of Corrections. Instead, supervising officers can be held liable under section 1983 "only if they play an affirmative part in the alleged deprivation of constitutional rights." *King v. Atiyeh*, 814 F. 2d 565, 568 (9th Cir. 1987).

The Ninth Circuit has identified four general situations in which supervisory liability may be imposed:

> "…for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others. … In a section 1983 claim, a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them. The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."

*Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) (internal citations and quotation omitted.)

Having determined that the staff who interacted with Albert and treated him medically were not deliberately indifferent to his serious medical needs, it follows that their supervisors could not have directed or acquiesced in any deliberate indifference of their employees. Further, none of these three Defendants—Winner, Scharf, and Abbott—were responsible for medical decisions regarding his treatment. (Docs. 56-3, 56-5, and 56-6.) Scharf is Director of Nursing, and though she is familiar with Albert, she has had nothing to do with determining his medical treatment. (Doc. 56-3 at 3.) Abbott and Winner did not directly interact with Albert regarding his medical care but did answer grievances he had filed. (Docs. 56-5 at 2 and 56-5 (including document showing Winner granted one of Albert's grievances, in part); Doc. 56-6.) Answering grievances, without more, is not a sufficient basis to state a claim of deliberate indifference, especially when one is not in a position as a medical provider to make any changes in the patient's treatment. *Accord*, *Greeno v. Daley*, 414 F.3d 645, 655-656 (7th Cir. 2005).

4. Qualified Immunity

The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v.*

*Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Stanton v. Sims*, 572 U.S. 3, 6 (2013) (citations omitted).

To determine if an official is entitled to qualified immunity the court considers two factors: whether the facts as alleged state a violation of a constitutional right, and whether the right is clearly established, such that a reasonable official would have known that his or her conduct was unlawful. *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (receded from by *Pearson v. Callahan*.) A district court is "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

The Court having determined that no constitutional violation occurred, Defendants are entitled to qualified immunity.

Based on the foregoing, the Court enters the following:

## RECOMMENDATIONS

1. Defendants' Motion for Summary Judgment should be GRANTED. (Doc. 55.)

2.      The Clerk of Court should be directed to close this matter and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

3.      The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.

4.      At all times during the pendency of this action, Albert must immediately advise the Court of any change of address and its effective date. Failure to file a notice of change of address may result in the dismissal of the action for failure to prosecute pursuant to Fed. R. Civ. P. 41(b).

### NOTICE OF RIGHT TO OBJECT
### TO FINDINGS & RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may object to the Findings and Recommendations within 14 days. *See* 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

DATED this 21st day of June, 2022.

Kathleen L. DeSoto
United States Magistrate Judge